THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, *v.* THE NEW YORK REFRIGERATING CONSTRUCTION COMPANY et al., Appellants.

While the general rule is that, where a contract is rescinded while in the course of performance, no claim in respect of performance may thereafter be made, it does not apply where, by the agreement of rescission, the claim has been expressly or impliedly reserved.

Defendant, the N. Y. R. C. Co., being the highest bidder, was awarded the privilege of introducing its refrigerating apparatus in one of the New York city markets, and entered into a contract with the city, by which it agreed, among other things, to pay to the city a specified sum annually, the payments to be made quarterly. A bond was furnished by the company upon which the other defendants were the sureties. The recital in the bond referred to the contract which was attached, and it was conditioned for the performance of "each and every condition therein contained." In an action to recover two quarterly payments alleged to be due on the contract, *held,* that the recital was broad enough to cover the condition, and to render the sureties liable if a breach was established.

The contract provided that, in case of non-performance by the company, certain prescribed proceedings might be taken, and, after a hearing therein, the city comptroller, upon direction of the commissioner of the sinking fund, was vested with power to notify the company to discontinue its system. After the commencement of this action such proceedings were instituted, and at the termination thereof the comptroller, by direction of the commissioners, notified the company to discontinue and that the contract was canceled and annulled. Defendants claimed that this cancellation destroyed the cause of action. *Held,* untenable; that it was not a rescission in the strict technical sense which destroys all right of action, but simply a termination of the contract according to its terms, which left undisturbed all existing liabilities.

The complaint alleged that the payments sought to be recovered were due February 1 and May 1, 1891. By the contract the payments were not due in advance. The testimony on the part of plaintiff was to the effect that the payments unpaid were for the quarter from February 1 to May 1, and from May 1 to August 1. The trial court found that defendant had not paid the payment for the quarter ending February 1, 1891. *Held,* that while there was no proof to sustain this finding, yet as it appeared that two quarterly payments were in fact due, and unpaid, it was incumbent on defendant to raise the specific objection on the trial, and, as this was not done, it could not be raised upon appeal.

(Argued May 2, 1895; decided May 21, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 14, 1894, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Burton N. Harrison* for appellants. A complete defense for the three individual defendants, the three sureties in the bond sued on, is found in the fact that the complaint does not charge any default of the defendant company, the principal in the bond, as to any matter for which the securities in the bond became thereby bound. (*N. M. B. Assn.* v. *Conkling*, 90 N. Y. 120; *Wood* v. *Fisk*, 63 id. 250; *McCluskey* v. *Cromwell*, 11 id. 598; *Gates* v. *McKee*, 13 id. 237; *W., etc., Co.* v. *Clinton*, 66 id. 331; *Miller* v. *Stewart*, 9 Wheat. 702; *U. S.* v. *Boyd*, 15 Pet. 208; *Birckhead* v. *Brown*, 5 Hill, 640; *Ward* v. *Stahl*, 81 N. Y. 408.) The supplemental answer alleges, the evidence proves, and the findings show, a complete defense, not only for the three sureties in the bond, but also for the defendant corporation — the latter the principal in the bond sued on. (*McCreery* v. *Day*, 119 N. Y. 1; *O. P. R. R. Co.* v. *Forrest*, 128 id. 91; *People* v. *Vilas*, 36 id. 400; *Hughson* v. *City of Rochester*, 49 Hun, 51; *McCotter* v. *Hooker*, 8 N. Y. 507; *Ex parte McCardle*, 7 Wall. 506; *Butler* v. *Palmer*, 1 Hill, 328; *Hinsdale* v. *White*, 6 id. 507.) The statute under which the comptroller proceeded authorized him to adjust, as he did, the claims for and against the city by canceling and annulling the agreement of May 15, 1890. (Laws of 1849, chap. 187, § 11; Laws of 1857, chap. 446, § 22; Laws of 1873, chap. 335, § 29; Laws of 1882, chap. 410, § 123.) The opinion of the learned justice below, that the cancellation and annulment of the agreement of May 15, 1890, should be construed to be merely the notice by the instrument of May 15, 1890, provided for, notifying the defendant company to discontinue its operations

for the future, and to remove its apparatus from the market, is untenable. (Laws of 1882, chap. 410, § 123 ; *Mansfield's Case*, 102 N. Y. 205 ; *Hughson* v. *City of Rochester*, 49 Hun, 52.)

*D. J. Dean* for respondent. The omission of the common council to act upon the company's application for a permit affords no defense to this action. (*Stewart* v. *Keteltas*, 36 N. Y. 388 ; *Dannat* v. *Fuller*, 120 id. 554 ; *Patterson* v. *O'Hara*, 2 E. D. Smith, 58 ; *Brewer* v. *Knapp*, 1 Pick. 332 ; *Davis* v. *Tyler*, 18 Johns. 489 ; Lawson's Pres. Ev. 350, D ; *Decker* v. *Livingston*, 15 Johns. 479 ; *Weeks* v. *Little*, 89 N. Y. 566 ; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 id. 205 ; *Barr* v. *N. Y., L. E. & W. R. Co.*, 125 id. 263 ; *Mayor* v. *N. B. Bank*, 126 id. 665.) The common council of the city of New York is a legislative body, its acts involve the exercise of discretion and impute no liability to the city. (Laws of 1882, chap. 410, §§ 29, 86 ; *Schanck* v. *Mayor, etc.*, 69 N. Y. 444 ; *People ex rel.* v. *Grant*, 126 id. 473 ; *N. Y. & H. R. R. Co.* v. *Mayor, etc.*, 1 Hilt. 562 ; *Child* v. *Boston*, 4 Allen, 41 ; *E. R. G. L. Co.* v. *Donnelly*, 93 N. Y. 557 ; *Mathewson* v. *Grand Rapids*, 50 N. W. Rep. 651 ; *Hassett* v. *McArdle*, 7 Misc. Rep. 710 ; *Jones* v. *Judd*, 4 N. Y. 412 ; *Heine* v. *Myer*, 61 id. 171.) Even conceding that the city was under an obligation to procure the permit for the defendant company, and that the procuring of the permit was a condition precedent to the maintenance of an action for the rent, it is submitted that such condition precedent has been waived. ( *White* v. *Beeten*, 7 H. & N. 40 ; *Behn* v. *Burness*, 3 B. & S. 751 ; *Pust* v. *Dowie*, 5 id. 20 ; *Jonassohn* v. *Young*, 4 id. 296 ; *M. D. Foundry* v. *Hovey*, 21 Pick. 417 ; *Norrington* v. *Wright*, 115 U. S. 188 ; *M. F. & M. Co.* v. *Lorentz*, 44 Md. 218 ; *Sampson* v. *S. I. W. Co.*, 6 Gray, 120 ; *Kenworthy* v. *Stevens*, 132 Mass. 125 ; Benjamin on Sales [4th Eng. ed.], 547 ; Leake on Cont. 664 ; *Wiley* v. *Athol*, 150 Mass. 426.) The defendants' construction of the agreement with regard to payments is totally at variance

with its true intent and meaning. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 129, 145; *Mayor* v. *D. D., E. B. & B. R. R. Co.,* 47 Hun, 199; 112 N. Y. 137.) The practical construction placed upon the agreement by the defendants is binding upon them. (*Powers* v. *Athens,* 26 Hun, 287; 99 N. Y. 592; *Fort* v. *Burch,* 6 Barb. 60–73; *Du Bois* v. *Brown,* 1 Dem. 317; *Miller* v. *Rheinweig,* 79 Hun, 1; *McKeen* v. *Delancey,* 5 Cranch, 22; *Vincennes* v. *C. G. L. Co.,* 31 N. E. Rep. 573; *Easton* v. *Pickersgill,* 55 N. Y. 310.) The resolution of the sinking fund operated prospectively, and has no retroactive effect. (Laws of 1882, chap. 410, §§ 123, 170; *Kingsbury* v. *Westfall,* 61 N. Y. 356; *Kingsbury* v. *Williams,* 53 Barb. 142; *Gelpcke* v. *Quentell,* 74 N. Y. 599; *Roe* v. *Conway,* Id. 204; *Johnson* v. *Oppenheim,* 55 id. 280.) The bond is not defective in that the names of the sureties are not inserted in the body of it. (21 Am. & Eng. Ency. of Law, 449; Brandt on Suretyship, 15; *Fulton's Case,* 7 Cow. 484.) The defendant company is a proper party to the suit on the bond. (Code Civ. Pro. § 454; *Viadero* v. *Morton,* 6 Civ. Pro. Rep. 238; *Field* v. *Van Cott,* 5 Daly, 308.)

BARTLETT, J. This is an appeal from a judgment of the General Term, first department, affirming a judgment in favor of plaintiff.

This action is brought to recover under a written agreement and a bond executed in pursuance thereof.

The corporation defendant executed the agreement with the city of New York, and the individual defendants are the sureties on the bond.

The refrigerating company, as the highest bidder, was awarded the privilege of introducing its refrigerating apparatus in the new West Washington Market, paying therefor five per cent of the gross receipts from the standholders in the market, and the additional sum of fifty-five hundred dollars yearly, payable quarterly.

The agreement required the refrigerating company to give a bond, in the penal sum of ten thousand dollars, for the

faithful performance of the terms of the agreement, with two sureties.

The bond was duly furnished by the refrigerating company, with three sureties, the individual defendants.

This action is brought to recover two quarterly payments of $1,375.00 each, alleged to be due under the contract, February 1st and May 1st, 1891, respectively.

It is stipulated that a second pending action shall abide the result of this one.

Several defenses are pleaded by the defendants.

It is insisted that the recital of the bond is not broad enough to cover the condition, and, as a result, that the sureties are not liable in this action.

The recital refers to the written contract which is attached to the bond; the condition requires a performance of the contract in " each and every provision therein contained," and it is clear that the sureties are liable if a breach is established.

It is argued that a surety is never to be implicated beyond his specific engagement, and that his liability is always *strictissimi juris*, and must not be extended by construction.

While this rule is well settled and the courts uniformly enforce it, the case at bar presents no violation.

It is further urged that the contract has been canceled and annulled by the parties, and that an action cannot be founded thereon.

We have been referred to numerous authorities laying down the general doctrine that where a contract is rescinded while in the course of performance, no claim in respect of performance, or of what has been paid or received thereon, may thereafter be made.

This general rule is subject, however, to the qualification that any claim founded on the contract must be referred to the agreement of rescission, to ascertain whether it has been expressly or impliedly reserved. (*McCreery* v. *Day*, 119 N. Y. 5.)

In the case cited Judge ANDREWS says that the liability of Garrison " depends on the intention to be deduced from the

agreement of annulment, construed in the light of attending circumstances."

In the case at bar we must apply this principle of construction, as it would be unjust to enforce a hard and fast rule without regard to the situation of the parties and the circumstances that induced the city of New York to terminate the contract.

The fifth subdivision of the contract provides the mode of procedure in case of non-performance by the refrigerating company. The comptroller was to certify the fact in writing to the commissioners of the sinking fund and the company afforded an opportunity to be heard in reply to the charges, and after the hearing the comptroller, upon the direction of the commissioners, was vested with the power to notify the company to discontinue its system.

This provision of the contract was invoked by the city, the company failed to appear before the commisioners in answer to the charges preferred by the comptroller, and the latter, by direction of the commissioners, notified the company to discontinue its system and that its contract was canceled and annulled.

At the time this occurred these actions were pending to recover payments due under the contract, and yet the appellants contend that it was the intention of all the parties to the contract to effect a strict rescission leaving the situation precisely as if no contract had ever existed.

In view of the *status* when the comptroller, acting under the direction of the commissioners of the sinking fund, served his final notice, we think it was not a rescission in the strict technical sense which destroyed all rights of action, but was a termination of the contract according to its terms and left undisturbed all existing liabilities; the rescission had no retroactive effect. This result is to be fairly implied from all the surrounding circumstances and carries out the obvious meaning of the parties when the contract was executed.

The position assumed by the appellants is technical, forced and unnatural.

We have been referred to a number of cases involving questions somewhat similar to the point now under consideration, but as each case rests on its own peculiar circumstances, we prefer to place our decision on the facts as disclosed and the general principles of law already stated.

We do not think it necessary to discuss the statutory powers of the commissioners of the sinking fund or the comptroller as we are of opinion that they acted strictly within the provisions of the contract which clothed them with abundant authority to proceed as they did in the premises.

We find nothing in the contract to warrant the contention of appellants that the fifty-five hundred dollars per annum to be paid to the city was to come out of the receipts of the business from the standholders in the market.

The covenant to pay this sum is independent of the receipts from standholders, and is absolute in its terms.

The defendant company has put a practical construction on the contract to this effect by paying certain quarterly payments due under this covenant.

The appellants claim there is no proof of these payments, but when a witness, a bookkeeper in the finance department, was asked what payments were unpaid, and he named four quarterly payments, it is a fair presumption that all others were paid.

The appellants take the point that the tenth finding of fact involves legal error, as there is no evidence to support it; the finding is to the effect that the defendant corporation has not paid to the plaintiffs the sum of $1,375 in the complaint demanded for the quarter ending February 1st, 1891.

At the trial the plaintiffs swore Henry Maurer, one of the bookkeepers in the finance department, and he testified to four quarterly payments as unpaid, being the following, viz.: Feb. 1st to May 1st, 1891; May 1st to Aug. 1st, 1891; Aug. 1st to Nov. 1st, 1891; Nov. 1st to Feb. 1st, 1892.

The complaint in this action covers payments alleged to have become due February 1st, 1891, and May 1st, 1891. There is no proof before us as to the quarterly payments embraced

in the second action, which is to abide the result of this, but presumably it was intended to cover the other two of the four payments remaining unpaid.

As the payments were not due in advance, the testimony of the witness referred to does not relate to a first payment due February 1st, 1891, but to one due May 1st, 1891, and the result is that the tenth finding of fact would seem to be without evidence to support it. This failure of proof was not specifically pointed out by defendants' counsel at the trial.

After the plaintiffs rested counsel for defendants moved separately as to each of the defendants " to dismiss the complaint on the ground that plaintiffs have not proved the cause of action alleged in the complaint as against the defendant for whom the motion to dismiss is made, and upon the further ground that no cause of action has been proved in favor of the plaintiffs and against the defendant for whom the motion to dismiss is made."

As plaintiffs' witness had testified to the four quarters' rent claimed to be due and unpaid, it was incumbent upon defendants to raise the specific objection that the quarter's rent alleged to have fallen due February 1st, 1891, had not been proved, and that judgment could not be rendered therefor. If this had been done plaintiffs might have supplied the missing proof, or amended their pleadings to conform to the proofs.

The defendants cannot raise this question for the first time on appeal, and the plaintiffs are, therefore, entitled in the two actions to recover on the four quarters' rent proved to be due and unpaid.

The fact that defendants' counsel three months after the actual trial filed an exception to the finding in question does not cure his omission to properly raise the point by objection at the trial.

We have examined the other points and exceptions, but find no reason for reversing the judgment.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.